1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                       **SOUTHERN DISTRICT OF CALIFORNIA**

10   SAMY ABDOU,                          CASE NO. 12-CV-1804 BEN (RBB)

11                          Plaintiff,    **ORDER:**

12        vs.                             **(1) CONSTRUING CLAIMS**

13   ALPHATEC SPINE, INC.,                **(2) SETTING HEARING ON
                                          MOTION FOR SUMMARY**
14                         Defendant.     **JUDGMENT**

15

16        In this patent infringement action, the parties seek construction of ten sets of

17   claim terms found in U.S. Patent Nos. 7,951,153 and 8,172,855.  This matter was heard

18   on January 17, 2014.  Having considered the papers filed by the parties and oral

19   argument on the motion, the Court construes the terms as follows.

20                                 **BACKGROUND**

21        Plaintiff Samy Abdou, M.D., alleges that Defendant Alphatec Spine, Inc.

22   willfully infringed U.S. Patent Nos. 7,951,153 ("the '153 patent") and 8,172,855 ("the

23   '855 patent"), both of which are entitled, "Devices and Methods for Inter-Vertebral

24   Orthopedic Device Placement."  The patents at issue are directed toward the treatment

25   of diseases of the spine.

26        The spine consists of a vertebral column and a spinal cord.  The vertebral column

27   provides support for the body and protects the spinal cord.  Posterior to the vertebral

28   column is the spinal cord, and anterior to the vertebral column is the aorta and vena

cava, the body's two major blood vessels.  The vertebral column is made up of individual vertebral bones, which are separated by an intervertebral disc space.  The disc space permits movement between vertebral bones and absorbs shock from the load transmitted through the vertebral column.  Many medical problems involving the spine result from a problem of the interverebral disc (e.g., herniation) or compression of surrounding nerves.  Treatment of these issues include implanting devices between vertebrae in order to adjust, align, and maintain the spatial relationship between them.

Abdou is the named inventor in the '153 and '855 patents.  The '153 and '855 patents teach and claim devices and methods to target, access, and perform surgical work in the intervertebral space with minimal tissue dissection.  The '153 patent discloses devices by which a surgeon may access the intervertebral space by using a curved or arced portal ("insertion device") that allows for placement of a sizeable implant.  The insertion device contains an internal bore or guide shaft, which extends from the proximal opening (nearest the surgeon) toward the distal end (at the disc space).  An orthopedic implant is advanced through the bore and into the targeted disc space. The '855 patent discloses methods for targeting and accessing a location within the spinal column, including between vertebrae, and for delivering an orthopedic implant into that location, using devices similar to those described in the '153 patent.

Abdou brings this action for infringement of the '153 and '855 patents.  The parties have submitted competing constructions for ten sets of claim terms found in the '153 '855 patents.

## DISCUSSION

### I.   LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). Courts determine the meaning of disputed claim terms from the perspective of a person of ordinary skill in the art at the time the patent is filed. *Chamberlain Grp., Inc. v. Lear*

*Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008).  Claim terms "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (internal quotation marks omitted).

When construing claim terms, the court should first look to sources in the intrinsic record. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  First, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.  Second, the claims "must be read in view of the specification, of which they are a part." *Id.* at 1315 (internal quotation marks omitted).  The specification is usually "dispositive," as "it is the single best guide to the meaning of a disputed term." *Id.* (internal quotation marks omitted).  Third, the court should consider the patent's prosecution history, which is the record of proceedings before the Patent and Trademark Office ("PTO") and includes the prior art cited during the patent examination.  *Id.* at 1317.  However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

If the intrinsic evidence resolves the ambiguity in the disputed claim terms, then "it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583.  If ambiguities in the claim terms remain, however, courts may consider extrinsic evidence.  *Id.* at 1584.  Extrinsic evidence includes expert testimony, inventor testimony, dictionaries, and scientific treatises. *Phillips*, 415 F.3d at 1317.

## II.   THE '153 AND '855 PATENTS

The parties dispute ten sets of claim terms found in the '153 and '855 patents.

### A.   Claim Terms Relating to Whether the Devices Attach Inside the Body

Five sets of claim terms address whether the "mount," "anchor device," "fixation member," and "first member" limitations of the claimed devices are mountable, positionable, or attachable only inside the body.  Alphatec argues that the "mount,"

"anchor device," "fixation member," and "first member" limitations are attachable only inside the body, while Abdou argues that they are attachable both inside and outside of the body.

The Court concludes that the "mount," "anchor device," "fixation member," and "first member" limitations of the claimed devices are mountable, positionable, or attachable both inside and outside of the body.  The claim language is agnostic as to whether the point of attachment is inside or outside of the body.  (*See, e.g.*, '153 patent, at 7:35-37 ("a first mount . . . mountable to a defined anatomical position relative to the target space"); *id.* at 8:31-33 ("a mount that is positionable at a defined anatomical relationship relative to the target space between the skeletal segments"); *id.* at 8:61-65 ("anchor device having . . . a second region [that] attaches onto a surface with defined spatial relationship to the disc space"); '855 patent, at 15:38-40 ("positioning an implant insertion assembly in proximity to the target location"); *id.* at 17:1-2 ("positioning . . . a first member of a targeting apparatus in proximity to the first vertebral bone").)  In addition, the specifications indicate that no particular attachment location is required.  (*See, e.g.*, '153 patent, at 5:45-49 ("The coupler 110 of the device 100 is then attached to an attachment point.  It should be appreciated that the attachment point need not be the disc space itself.  The coupler 110 can be attached directly to one of the vertebrae or to some other reference location."); '855 patent, at 13:66-14:1 ("In other embodiments, one or more anchors may be placed into the inter-spinous ligament, lateral to the inter-spinous space, into the pedicles or any other suitable anchor point.").)

Alphatec's arguments to the contrary are unpersuasive.  First, Alphatec argues that the '153 and '855 patents exclusively contain exemplary embodiments describing or depicting the mount, anchor device, fixation member, and first member as attaching inside the body.  Although this is true, the patents do not contain any disavowal of anchoring the devices outside of the body.  "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in

the art when read in the context of the specification and prosecution history." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id.* "Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Id.* at 1366 (internal quotation marks omitted). "[E]ven where a particular structure makes it particularly difficult to obtain certain benefits of the claimed invention, this does not rise to the level of disavowal of the structure. It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Id.* (internal quotation marks and citation omitted); *see also Phillips*, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."). The embodiments contained in the patents are examples only, and the patents do not contain any disavowals limiting the scope of the claim language. (*See, e.g.*, '153 patent, at 4:30 ("[a]n exemplary embodiment"); *id.* at 5:38 ("[a]n exemplary method").)

Second, Alphatec argues that the purposes of the invention—such as accurate targeting of the intervertebral space—support construing the claims as disclosing devices that attach only to locations inside of the body. As explained above, the embodiments describing the devices as attaching inside of the body are examples only; the patents do not contain any disavowal of anchoring the devices outside of the body. Although these embodiments may offer a benefit, this does not amount to a disclaimer or otherwise limit the claim scope. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) ("Generally, a claim is not limited to the embodiments described in the specification unless the patentee has demonstrated a clear intention to limit the claim's scope with words or expressions of manifest exclusion or restriction. By the same token, not every benefit flowing from an invention is a claim limitation." (internal

1   quotation marks and citation omitted).)

2       Third, Alphatec argues that the preferred embodiments—devices attachable

3   inside the body—should be read into the claims.  "To the extent that . . .  passages [in

4   the patent] refer to the preferred embodiment, they cannot be read into the claims

5   without some hook."  *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243,

6   1252 (Fed. Cir. 1998).  Alphatec argues that in this present action, the necessary hooks

7   are the disputed claim terms: "anatomical position" / "anatomical relationship";

8   "surface with defined spatial relationship to the disc space" / "surface with defined

9   spatial relationship to the target segment of the skeletal member"; "when attached to

10  the insertion device, the mount limits movement of the insertion device relative to the

11  skeletal segments/member" / "the anchor, when attached to the insertion device, limits

12  the movement of the insertion device relative to" / "the fixation member limits

13  movement of the implant insertion member relative to the target location in at least one

14  plane"; and "in proximity to the first vertebral bone."  The necessary hooks, however,

15  are not the disputed claim terms, but the requirement that the devices have a particular

16  point of attachment.  For example, claim 8 of the '153 patent discloses that the second

17  region of the anchor device "attaches *onto a surface* with defined spacial relationship

18  to the disc space." ('153 patent, at 8:64-65 (emphasis added).)  Many of the disputed

19  claims do not contain a requirement that the devices have a particular point of

20  attachment. (*See, e.g.*, *id.* at 7:33-67 (claim 1), 8:13-41 (claim 6).)  Accordingly, the

21  Court declines to read the preferred embodiments into the claims.

22      The Court will consider the five sets of claim terms that address whether the

23  devices are mountable, positionable, or attachable only inside the body.

24                  **1.    "anatomical position" / "anatomical relationship"**

25      The parties dispute the terms "anatomical position" (claim 1 of the '153 patent)

26  and "anatomical relationship" (claims 6 and 21 of the '153 patent).  Alphatec proposes

27  the following construction, while Abdou argues that these terms should be given their

28  plain and ordinary meaning.   In the alternative, Abdou proposes a competing

construction.  The Court declines to construe these terms.

| Term | Abdou's Proposed Construction | Alphatec's Proposed Construction |
|---|---|---|
| "anatomical position" / "anatomical relationship" | Plain and ordinary meaning.<br><br>If construction is necessary, then "position relative to the body." | "position within the body" |

Claim 1 recites: "An instrument . . . comprising: . . . a first mount comprising an elongate body having a distal end mountable at a defined *anatomical position* relative to the target space." ('153 patent, at 7:33-37 (emphasis added).)  Claim 6 recites: "An instrument . . . comprising: . . . a mount that is positionable at a defined *anatomical relationship* relative to the target space between the skeletal segments . . . ." (*Id.* at 8:13-37 (emphasis added).)  Claim 21 recites: "An instrument set . . . comprising: . . . a mount having a first segment and a second segment, wherein the first segment of the mount is positionable at a defined *anatomical relationship* relative to the target segment of the skeletal member . . . ." (*Id.* at 10:44-65 (emphasis added).)

The Court finds that no construction is necessary because the claim language has a plain and ordinary meaning.  Alphatec argues that because the end of the mount must be attached at a location inside of the body, the "anatomical position" and "anatomical relationship" must be inside of the body as well.  As explained above, however, the end of the mount does not need to be attached at a location inside of the body.  There is nothing in the claim language that addresses where the point of attachment must be as long as a defined anatomical relationship is achieved.

///

///

///

///

2. **"surface with defined spatial relationship to the disc space" / "surface with defined spatial relationship to the target segment of the skeletal member"**

The parties dispute the terms "surface with defined spatial relationship to the disc space" (claims 8 and 12 of the '153 patent) and "surface with defined spatial relationship to the target segment of the skeletal member" (claim 20 of the '153 patent). Alphatec proposes the following construction, while Abdou argues that these terms should be given their plain and ordinary meaning. In the alternative, Abdou proposes competing constructions. The Court declines to construe these terms.

| Term | Abdou's Proposed Construction | Alphatec's Proposed Construction |
|---|---|---|
| "surface with defined spatial relationship to the disc space" | Plain and ordinary meaning.<br><br>If construction is necessary, then "surface at a defined position relative to the space between two vertebral bodies." | "Surface within the body, at or near a bony landmark."<br><br>Alternatively, indefinite. |
| "surface with defined spatial relationship to the target segment of the skeletal member" | Plain and ordinary meaning.<br><br>If construction is necessary, then "surface at a defined position relative to the targeted segment of bone structure." | "Surface within the body, at or near a bony landmark."<br><br>Alternatively, indefinite. |

Claims 8 and 12 recite: "at least one anchor device having . . . a second region [that] attaches onto a surface with defined spatial relationship to the disc space." ('153 patent, at 8:61-65, 9:31-34.) Claim 20 recites: "at least one anchor device having . . . a second segment that is adapted to attach onto a surface with defined spacial

1  relationship to the target segment of the skeletal member." (*Id.* at 10:28-32.)  The

2  Court finds that no construction is necessary because the claim language has a plain

3  and ordinary meaning.

4      Alphatec argues that one end of the anchor device must attach to a surface within

5  the body.  In addition, Alphatec argues that if its construction is not adopted, any

6  "surface" would have a defined spacial relationship to the target space/skeletal

7  member.  As a result, this limitation would be functionally meaningless and therefore

8  indefinite.  As explained above, however, the end of the anchor device does not need

9  to be attached at a location inside of the body. Moreover, declining to construe these

10  terms would not render this limitation functionally meaningless.  The end of the anchor

11  device must be attached to a surface with a defined spatial relationship to the disc

12  space. This means that the anchor device must be positioned so that the curved portion

13  of the device accurately targets the surgical site.

14      **3.    "when attached to the insertion device, the mount limits**

15          **movement of the insertion device relative to the skeletal**

16          **segments/member" / "the anchor, when attached to the**

17          **insertion device, limits the movement of the insertion**

18          **device relative to" / "the fixation member limits**

19          **movement of the implant insertion member relative to**

20          **the target location in at least one plane"**

21      The parties dispute the terms "when attached to the insertion device, the mount

22  limits movement of the insertion device relative to the skeletal segments/member"

23  (claims 6 and 21 of the '153 patent), "the anchor, when attached to the insertion device,

24  limits the movement of the insertion device relative to" (claims 8, 12, and 20 of the

25  '153 patent), and "the fixation member limits movement of the implant insertion

26  member relative to the target location in at least one plane" (claim 6 of the '855 patent).

27  Alphatec proposes the following constructions, while Abdou argues that these terms

28  should be given their plain and ordinary meaning.  The Court declines to construe these

terms.

| Term | Abdou's Proposed Construction | Alphatec's Proposed Construction |
|------|-------------------------------|----------------------------------|
| "when attached to the insertion device, the mount limits movement of the insertion device relative to the skeletal segments/member" | plain and ordinary meaning | "The mount is attached to a surface within the body such that, when attached to the insertion device, the mount limits the movement of the insertion device relative to the skeletal member to one plane" |
| "the anchor, when attached to the insertion device, limits the movement of the insertion device relative to" | plain and ordinary meaning | "The anchor is attached to a surface within the body such that, when attached to the insertion device, the anchor limits the movement of the insertion device relative to . . . to one plane" |
| "the fixation member limits movement of the implant insertion member relative to the target location in at least one plane" | plain and ordinary meaning | "The fixation member is attached to a surface of a skeletal segment, such that it prevents the implant insertion member and the target location from moving relative to one another in at least one plane" |

The mount, anchor device, and fixation member limit movement of the insertion device.  In regard to the mount, claim 6 of the '153 patent recites: "a mount that is positionable at a defined anatomical relationship relative to the target space between the skeletal segments, . . . and, when attached to the insertion device, the mount limits movement of the insertion device relative to the skeletal segments." ('153 patent, at 8:31-37.)  Claim 21 of the '153 patent recites a "mount having a first segment and a second segment, . . . wherein the second segment of the mount attaches to the proximal

segment of the insertion device, and, when attached to the insertion device, the mount limits movement of the insertion device relative to the skeletal member." (*Id*. at 10:58-65.)

In regard to the anchor, claim 8 of the '153 patent recites an "anchor, when attached to the insertion device, [that] limits the movement of the insertion device relative to the disc space." (*Id*. at 8:65-67.) Claim 12 of the '153 patent recites an "anchor, when attached to the insertion device, [that] limits movement of the insertion device relative to the disc space." (*Id*. at 9:34-36.) Claim 20 of the '153 patent recites an "anchor device, when attached to the insertion device, [that] limits the movement of the insertion device relative to the target segment of the skeletal member." (*Id*. at 9:33-35.)

In regard to the fixation member, claim 6 of the '855 patent recites a "fixation member [that] limits movement of the implant insertion member relative to the target location in at least one plane." ('855 patent, at 15:50-53.)

The Court finds that no construction is necessary because the claim language has a plain and ordinary meaning.

As a preliminary matter, Alphatec argues that the claims must be construed because words of degree—"relative to"—are used. According to Alphatec, the Court must determine whether the patent's specification provides some standard for measuring that degree. However, a court is only prevented from adopting the plain and ordinary meaning when doing so would fail to resolve the issue of scope. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). Here, adopting the plain and ordinary meaning resolves the parties' dispute.

Alphatec's proposed constructions would require that the mount, anchor, and fixation member be attached within the body and limit movement of the insertion

1  device/member such that the insertion device/member could only move in one plane.
2  According to Alphatec, if the device were movable in more than one plane, this would
3  result in increased tissue dissection and damage as well as decreased likelihood of
4  optimal device placement within the intervertebral space.  The Court declines to adopt
5  Alphatec's proposed construction for several reasons.

6      First, as explained above, the end of the mount, anchor device, and fixation
7  member do not need to be attached at a location inside of the body.

8      Second, neither the claim language nor the specification require limiting
9  movement to one plane.  Even assuming that the embodiments in the patents limit the
10  movement of the insertion device/member to one plane, the embodiments contained in
11  the patents are examples only, and there are no disavowals limiting the scope of the
12  claim language.

13      Third, in regard to Alphatec's argument that its constructions are supported by
14  the purposes of the inventions, the embodiments describing the devices as limiting the
15  movement of the insertion device/member to one plane are examples only; the patents
16  do not contain any disavowal limiting the scope of the claim language. Although these
17  embodiments may offer a benefit, this does not amount to a disclaimer or otherwise
18  limit the claim scope.  *i4i Ltd. P'ship*, 598 F.3d at 843.

19      Fourth, in regard to the '153 patent, Alphatec's "within the body" constructions
20  are improper statements of intended use that do not alter the scope of the claims.  The
21  '153 patent contains apparatus claims for implanting an orthopedic implant.
22  "[A]pparatus claims cover what a device *is*, not what a device *does*."  *Hewlett-Packard*
23  *Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990).  Statements of
24  intended use in apparatus claims are not limiting "because the patentability of an
25  apparatus . . . depends on the claimed structure, not on the use or purpose of that
26  structure."  *Watson & Chalin Mfg., Inc. v. Boler Co.*, 227 F. Supp. 2d 633, 639 (E.D.
27  Tex. 2002).  Alphatec's proposed constructions requiring that "the mount / anchor is
28  attached to a surface within the body" impermissibly describe how the device is to be

used, not what the claimed structure is.

Accordingly, no construction of the terms "when attached to the insertion device, the mount limits movement of the insertion device relative to the skeletal segments/member," "the anchor, when attached to the insertion device, limits the movement of the insertion device relative to," and "the fixation member limits movement of the implant insertion member relative to the target location in at least one plane" is necessary.

### 4.    "first surface"

The parties dispute the term "first surface" (claim 6 of the '855 patent).  Alphatec proposes the following construction, while Abdou argues that this term should be given its plain and ordinary meaning.  The Court declines to construe this claim.

| Term | Abdou's Proposed Construction | Alphatec's Proposed Construction |
|------|-------------------------------|----------------------------------|
| "first surface" | plain and ordinary meaning | "A surface of a skeletal segment" |

Claim 6 recites: "A method for the delivery of an orthopedic implant onto a target location within a spinal column of a subject, comprising: . . . a fixation member, having a first segment that attaches onto a proximal segment of the implant insertion member and a second segment that attaches onto a *first surface* . . . ." ('855 patent, at 15:34-50 (emphasis added).)  The Court finds that no construction is necessary because the claim language has a plain and ordinary meaning.

The Court declines to adopt Alphatec's proposed construction. As explained above, the fixation member does not need to be attached at a location inside of the body.

Alphatec argues that if its proposed construction is not adopted, the limitation would be functionally meaningless.  According to Alphatec, the limitation is only meaningful if the "first surface" is inside of the body, because everything has a surface.

1    Giving this term its plain and ordinary meaning, however, does not mean that the
2    limitation must be interpreted in a way that would allow the fixation member to attach
3    to anything.  Per the claim language, after attachment to the "first surface," the fixation
4    member must limit movement of the implant insertion member relative to the target
5    location.  (*Id.* at 15:49-53.)  The fixation member may be attached to a surface outside
6    of the body and limit movement of the implant insertion member "relative to the target
7    location."

8                    **5.       "in proximity to the first vertebral bone"**

9            The parties dispute the term "in proximity to the first vertebral bone" (claim 28
10   of the '855 patent).  Alphatec proposes the following construction, while Abdou argues
11   that this term should be given its plain and ordinary meaning.  In the alternative, Abdou
12   proposes a competing construction.  The Court declines to construe this term.

13

| Term | Abdou's Proposed Construction | Alphatec's Proposed Construction |
|------|-------------------------------|----------------------------------|
| "in proximity to the first vertebral bone" | Plain and ordinary meaning.<br><br>If construction is necessary, then "near the first vertebral bone." | "Inside the subject's body, at or near the first vertebral bone."<br><br>Alternatively, indefinite. |

        Claim 28 recites: "A method to target and access a spinal segment of a subject,
comprising: . . . positioning at least a first member of a targeting apparatus in proximity
to the first vertebral bone."  ('855 patent, at 16:63-17:2.)  The Court finds that no
construction is necessary because the claim language has a plain and ordinary meaning.
        The Court declines to adopt Alphatec's proposed construction. As explained
above, the first member of the targeting apparatus does not need to be attached at a
location inside of the body.
        Alphatec argues that if its proposed construction is not adopted, the meaning and
scope of this term will be ambiguous, rendering the term indefinite.  According to

Alphatec, there will be no clear bounds for how close the first member of the targeting apparatus must be to the first vertebral bone in order to be "in proximity" to it. However, whether the patent sufficiently describes the invention so that a person skilled in the art is able to make and use it goes toward enablement and is more appropriately addressed on summary judgment. *See In re Wands*, 858 F.2d 731, 735 (Fed. Cir. 1988).

### B.   "arcuate internal bore" / "internal bore" / "bore"

During the hearing, the parties agreed that no construction of the terms "arcuate internal bore," "internal bore," and "bore" is necessary.  (Hearing Transcript [Docket No. 66], at 61-62.)  The Court declines to construe these terms.

### C.   "plunger"

The parties dispute the term "plunger" (independent claims 1 and 12 and dependent claims 4, 9, and 10 of the '153 patent). Alphatec proposes the following construction, while Abdou argues that this term should be given its plain and ordinary meaning.  In the alternative, Abdou proposes a competing construction.  The Court declines to construe this claim.

| Term | Abdou's Proposed Construction | Alphatec's Proposed Construction |
|------|-------------------------------|----------------------------------|
| "plunger" | Plain and ordinary meaning.<br><br>If construction is necessary, then "a device that slideably fits through the internal bore of the curvilinear member." | "An elongated device with a handle and tapered tip that is used to push the insertion device into contact with the target space" |

Claim 1 of the '153 patent recites: "an arcuate plunger that slidably fits within the arcuate internal bore of the curved elongate body, the plunger having a proximal end and a conical distal end and wherein, when the plunger is positioned in the arcuate internal bore, the proximal end of the plunger protrudes out of the proximal opening

of the arcuate internal bore and a conical distal end of the plunger protrudes out of the distal opening of the arcuate internal bore, and wherein the plunger prevents delivery of the implant by the insertion device through the arcuate internal bore when the plunger is positioned within the arcuate internal bore." ('153 patent, at 7:53-64.)

Claim 12 of the '153 patent recites: "a plunger that slidably positions within the arcuate internal bore of the curved elongate body, and wherein, when the plunger is positioned in the arcuate internal bore, a proximal end of the plunger protrudes out of the proximal opening of the insertion devise and a distal end of the plunger protrudes out of the distal opening of the insertion device, and wherein the plunger, when positioned within the arcuate internal bore, prevents delivery of the implant by the insertion device through the arcuate internal bore." (*Id.* at 9:37-46.)

The Court finds that no construction is necessary because the claim language has a plain and ordinary meaning. The term "plunger" is defined by the surrounding claim language that describes the characteristics of the plunger.

Alphatec argues that the written description defines "plunger" as an elongated device with a handle and tapered tip that is used to push the insertion device into contact with the target space. In support of its argument, Alphatec cites to an example shown in the specification, namely that drawn in Figures 8, 9, and 10B. This example describes a plunger that "has a tapered tip 815 on a distal end and a handle 820 on a proximal end." ('153 patent, at 5:27-28.) The handle is "used to push the insertion device 120 such that the insertion device 120 rotates toward the skin S about the pivot axis F." (*Id.* at 6:34-36.)

Alphatec's proposed construction, however, impermissibly limits the claim scope to one preferred embodiment. Specifically, it aims to limit the claims to the examples drawn in Figures 8, 9, and 10B. *See Thorner*, 669 F.3d at 1366-67 ("We do not read limitations from the specification into claims . . . [absent] clear and unmistakable disclaimer."). Moreover, the specification identifies the example Alphatec imports into the claim language as just that: "[a]n exemplary method of using the device." ('153

1    patent, at 5:38-39.)

2           In addition, Alphatec's proposed addition of the verbiage "is used to push the

3    insertion device into contact with the target space" improperly imports a functional

4    limitation into an apparatus claim.  *See Paragon Solutions, LLC v. Timex Corp.*, 566

5    F.3d 1075, 1091 (Fed. Cir. 2009) ("Construing a non-functional term in an apparatus

6    claim in a way that makes direct infringement turn on the use to which an accused

7    apparatus is later put confuses rather than clarifies, frustrates the ability of both the

8    patentee and potential infringers to ascertain the propriety of particular activities, and

9    is inconsistent with the notice function central to the patent system.").

10                    **D.    "curvilinear member"**

11          The parties dispute the term "curvilinear member" (independent claim 28 and

12   dependent claims 36, 37, and 42 of the '855 patent).  Alphatec proposes the following

13   construction, while Abdou argues that this term should be given its plain and ordinary

14   meaning.  The Court declines to construe this claim.

15

| Term | Abdou's Proposed Construction | Alphatec's Proposed Construction |
|------|-------------------------------|----------------------------------|
| "curvilinear member" | plain and ordinary meaning | "An elongated device with a handle and tapered tip that is used to push the insertion device into contact with the target space" |

22          Claim 28 of the '855 patent recites a "pivot member" that has an "elongated arm

23   [that] contains at least one bore that is adapted to receive a curvilinear member,

24   wherein the curvilinear member extends from a proximal end to a distal tip."  ('855

25   patent, at 17:10-13.)  Claim 28 further recites "rotating the pivot member about the

26   pivot axis and advancing the distal tip of the curvilinear member from a skin entry site

27   to the target location within the subject."  (*Id.* at 17:39-41.)  The Court finds that no

28   construction is necessary because the claim language has a plain and ordinary meaning.

Alphatec argues that the curvilinear member is the same as the '153 patent's "plunger." The '855 and '153 patents, however, are two distinct patents, with different specifications and prosecution histories. The "curvilinear member" of the '855 patent is not identical to the "plunger" of the '153 patent. In addition, similar to Alphatec's proposed construction for "plunger," Alphatec's proposed construction for "curvilinear member" improperly injects limitations into the claims and impermissibly limits the claim scope to one preferred embodiment. *See Thorner*, 669 F.3d at 1366-67.

### E.    "anchor device"

The parties dispute the term "anchor device" (independent claims 8, 12, and 20 and dependent claims 14-16, and 18-19 of the '153 patent). Alphatec proposes the following construction, while Abdou argues that this term should be given its plain and ordinary meaning. In the alternative, Abdou proposes a competing construction. The Court declines to construe this claim.

| Term | Abdou's Proposed Construction | Alphatec's Proposed Construction |
|---|---|---|
| "anchor device" | Plain and ordinary meaning.<br><br>If construction is necessary, then "support device." | "the coupler (110) and mount (115)" |

Claim 9, a representative claim, recites: "at least one anchor device having a first region that attaches with the proximal end of the insertion device at the proximal end of the insertion device and a second region attaches onto a surface with defined spatial relationship to the disc space, wherein the anchor, when attached to the insertion device, limits the movement of the insertion device relative to the disc space." ('153 patent, at 8:61-67.)

The Court finds that no construction is necessary because the claim language has a plain and ordinary meaning. Each independent claim's recitation of "anchor device"

1   is immediately followed by the open transitional term "having," with the remainder of

2   the limitation describing the structure and function of the anchor device.  Moreover,

3   the term "anchor" is used throughout the specification to describe embodiments that

4   "anchor" relative to a target location and attach to the insertion device. (*Id.* at 2:36-49;

5   Figs. 1, 2, 7, 9, 10B.)

6         Alphatec argues that the "anchor device" refers to the "the coupler (110) and

7   mount (115)."  This proposed construction, however, improperly limits the claims to

8   one embodiment in the specification.  The claim language defines the structure of the

9   "anchor device" more broadly than "coupler and mount."  In addition, the specification

10   contains no disavowal of the claim scope.

11                    **F.    "distance adjustment feature"**

12         The parties dispute the term "distance adjustment feature" (claim 28 of the '855

13   patent).  Alphatec proposes the following construction, while Abdou argues that this

14   term should be given its plain and ordinary meaning.  The Court declines to construe

15   this claim.

16

| Term | Abdou's Proposed Construction | Alphatec's Proposed Construction |
|---|---|---|
| "distance adjustment feature" | plain and ordinary meaning | "a screw" |

21         Claim 28 of the '855 patent recites: "a distance adjustment feature [that] is

22   adapted to adjust a distance between the first and second members, wherein

23   advancement of the adjustment feature in a first direction increases and retrains the

24   increased distance between the pivot axis of the second member and the target location,

25   and wherein advancement of the adjustment feature in a second direction decreases and

26   retains the decreased distance between the pivot axis and the target location[.]" ('855

27   patent, at 17:17-25.)  The Court finds that no construction is necessary because the

28   claim language has a plain and ordinary meaning.

1    Alphatec argues that Abdou expressly defined "distance adjustment feature"

2  during prosecution as "a screw."  Alphatec points to the Response to Office Action

3  mailed May 10, 2011, which states, "When the first and second members are coupled,

4  the distance between them is adjustable through the use of an adjustment feature, such

5  as screw 415." (Buccigross Decl., Exh. 2, at 61.)  In addition, Alphatec points to the

6  fact that Abdou did not provide any other examples of a "distance adjustment feature"

7  in addition to a screw in the specification or during prosecution.  Rather, the only

8  distance adjustment feature that the patent discloses is the screw.  (*See* '855 patent, at

9  7:10-26.)

10    On the contrary, Abdou did not expressly define "distance adjustment feature"

11  as "a screw."   A screw is merely mentioned in the specification as a preferred

12  embodiment.  The specification describes "a vertical adjustment actuator, *such as* a turn

13  screw," which "is positioned in the shaft of the sheath . . . ." ('855 patent, at 7:1-3

14  (emphasis added).)  The Federal Circuit has held that the use of "such as" in describing

15  one embodiment does not limit claims.   *See Catalina Mktg. Int'l, Inc. v.*

16  *Coolsavings.com, Inc.*, 289 F.3d 801, 811 (Fed. Cir. 2001) (claim term not limited to

17  embodiment disclosed in specification preceded by "such as").  Moreover, a turn screw

18  is described by the patent as "[a]n exemplary configuration" of the vertical adjustment.

19  ('855 patent, at 7:9.)

20    In addition, the '855 patent uses claim differentiation to show that the "distance

21  adjustment feature" of claim 28 is not limited to "a screw."  Dependent claim 34

22  claims: "A method as in claim 28, wherein the adjustment feature of the targeting

23  apparatus adjusts the distance between the first and second members using *a threaded*

24  *member*." ('855 patent, at 8:9-11 (emphasis added).)  The fact that dependent claim 34

25  claims the adjustment feature as "using a threaded member" (i.e., a screw) suggests that

26  independent claim 28 is broader and not limited to "a screw."

27  ///

28  ///

**CONCLUSION**

For the reasons stated above, the terms at issue shall be construed as indicated above.

Alphatec previously filed a Motion for Summary Judgment (Docket No. 51), which has been fully briefed. In its Motion for Summary Judgment, Alphatec argues that if the Court construes the asserted claims to permit mounting the device outside of the body, the claims are invalid for failure to meet the written description and enablement requirements of 35 U.S.C. § 112(a). A hearing on the Motion for Summary Judgment is set for **May 1, 2014, at 9:30 a.m.**

**IT IS SO ORDERED.**

DATED: April 7, 2014

_____
Hon. Roger T. Benitez
United States District Judge

12-CV-1804